IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

CASE NO. 4:09-CR-00072-BR

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | **DEFENDANT'S SENTENCING** |
| | ) | **MEMORANDUM** |
| vs. | ) | |
| | ) | |
| JOHN KENT COLVIN | ) | |

Defendant John Kent Colvin, through counsel, submits this Sentencing

Memorandum.

## INTRODUCTION

Mr. Colvin was found guilty after a jury trial of conspiracy to commit mail

fraud and five substantive counts of mail fraud. The Court has set the sentencing

hearing for 12 January 2011.

The Probation Office issued the Presentence Report (PSR) on 6 January

2011.[1] This Memorandum addresses some of the objections Mr. Colvin has

---

[1] The PSR was forwarded to counsel on 7 January 2011. The delayed
distribution of the PSR is directly attributable to the Government's untimely
submission of responses and objections to the draft PSR, in violation of Local Rule
32.2. Mr. Colvin has moved the Court to strike the Government's objections and
foreclose consideration of the Government's proposed enhancements beyond those
identified in the draft PSR. This memorandum addresses the reasons why the

asserted to the PSR's calculation of his Guidelines sentencing range. In addition, this Memorandum addresses reasons why a variance sentence below the advisory Guidelines range is consistent with the application of the factors this Court will consider in following the command of 18 U.S.C. § 3553(a) to impose a sentence that is "sufficient, but not greater than necessary" to achieve the goals of sentencing.

## ARGUMENT

I.  THE PSR INCORRECTLY CALCULATES MR. COLVIN'S OFFENSE LEVEL.

A.  The PSR Overstates The Loss Attributable To Mr. Colvin.

Section 2B1.1 is the applicable Guidelines provision for mail fraud, the offense for which the jury convicted Mr. Colvin. *See* U.S.S.G. § 2B1.1. That section makes the "loss" the primary determinant of the offense level. *See id.* § 2B1.1(b)(1); *United States v. Olis*, 429 F.3d 540, 545 (5th Cir. 2005) ("The most significant determinant of [the defendant's] sentence is the guidelines loss calculation."). The general rule is that the "loss" for purposes of the Guidelines calculation "is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A).

---

additional enhancements proposed by the Government are unsupported.

The Guidelines define "actual loss" as "the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.* § 2B1.1 cmt. n.3(A)(i). "Reasonably foreseeable pecuniary harm" is further defined as "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." *Id.* § 2B1.1 cmt. n.3(A)(iv). Intended loss "means the pecuniary loss that was intended to result from the offense." *Id.* § 2B1.1 cmt. n.3(A)(ii). In determining the intended loss amount, the Court must consider the defendant's subjective intent. *See, e.g., United States v. Middlebrook*, 553 F.3d 572, 578 (7th Cir. 2009).

The PSR concludes that Mr. Colvin is responsible for an intended loss of $21,009,429.69. PSR ¶ 16. As an initial matter, Mr. Colvin objects that the Government has not proved this loss amount. The Government's proof at trial showed that approximately $17 million was invested in BMP, a fact also noted in the PSR. *See id.* Moreover, just two days before presenting the chart relied on by the PSR, the Government produced a different chart, which showed a total "loss" more than $1,000,000 less. *See* US v. Colvin – Victim Loss and Restitution Amount (attached as Exhibit 1).

As shown below, the claimed loss is not the intended loss here, because Mr. Colvin did not subjectively intend such a loss; to the contrary, Mr. Colvin expected

3

investors to be repaid in full, plus interest, and the evidence at trial established that investors who were solicited by other salesmen were repaid in full, with interest. The claimed loss also overstates the actual loss.

      1.     The PSR overstates intended loss.

The loss determined by the PSR overstates the intended loss because Mr. Colvin fully expected that investors whose monies were solicited by Scott Hollenbeck and others like Tim Gristy would be repaid in full, with interest. That is exactly what happened when salesmen like Mr. Gristy solicited investors without making the kind of misstatements that Hollenbeck made. Mr. Gristy testified that all of his investors (he had also invested himself) were repaid in full, with interest. Mr. Colvin expected this result. The PSR errs in concluding that Mr. Colvin is responsible for an intended loss of $21,009,429.69.

      2.     The loss amount stated in the PSR is not the actual loss.

The loss determined by the PSR also overstates the actual loss. The investors' monies were invested in secured notes of BMP and Jenco Capital. *See, e.g.,* Defendant's Trial Exs. 157, 163 (attached as Exhibit 2). Mr. Colvin could not reasonably foresee actual loss to investors whose monies were so invested, where the security backing the loans provided protection in the event of non-payment. *See* U.S.S.G. § 2B1.1 cmt. n.3(A)(i) (actual loss is "reasonably foreseeable pecuniary

harm"). As noted in the PSR, litigation against BMP and others, supported by Mr. Colvin, ultimately resulted in a return of $15,694,043.98, approximately 75% of the total the PSR concludes was invested by those the PSR identifies as victims. The loss attributable to Mr. Colvin is properly reduced by the funds recovered by the investors. *Cf. id.* § 2B1.1 cmt. n.3(E)(ii) (credit against loss where defendant pledged or otherwise provided collateral). The operative actual loss for purposes of determining Mr. Colvin's Guidelines offense level is $4,250,000, that is, 25% of the total investments of $17,000,000 proved by the Government at trial.

B.    The Enhancement For Violation Of A Prior, Specific Administrative Order Is Not Warranted.

Guidelines section 2B1.1(b)(8)(C) provides for a two-level enhancement if the offense involved "a violation of any prior, specific . . . administrative order." U.S.S.G. § 2B1.1(b)(8)(C). The PSR applies this enhancement based on a Cease and Desist Order issued to Scott Hollenbeck. PSR ¶ 18; *see* Gov't Trial Ex. 145 (attached as Exhibit 3). Application of this enhancement is not warranted because there is no evidence that Mr. Colvin knew the terms of Hollenbeck's Cease and Desist Order and, therefore, could not have knowingly violated the Order. Moreover, application of this enhancement is not warranted because the Government did not prove a violation of the Order.

5

1.     Mr. Colvin did not know the terms of the Order.

At trial, the Government introduced the Cease and Desist Order and Hollenbeck testified that North Carolina securities agents served him with the Order.  Hollenbeck further testified that he called Mr. Colvin and told him that the agents had served the Order, which Hollenbeck said he understood precluded him from continuing to sell the Mobile Billboards investment.  Hollenbeck testified that Mr. Colvin advised him to comply and stop selling the Mobile Billboards investment, and that he did so.  The statement in the PSR that "Hollenbeck testified that he immediately faxed *this information* to Colvin and, with Colvin's knowledge, Hollenbeck continued to sell investments for Colvin" is simply wrong.  PSR, Addendum ¶ 7 (emphasis added).  Hollenbeck faxed copies of the agents' business cards to Mr. Colvin.  *See* Gov't Trial Ex. 148 (attached as Exhibit 4).  There is no evidence Hollenbeck sent Mr. Colvin the Order and no evidence that Mr. Colvin otherwise received the Order or any information about its terms.

The Guidelines require that the defendant knowingly violate a prior, specific administrative order before enhancement under section 2B1.1(b)(8)(C) applies.  The Guidelines include this enhancement because "[a] defendant who does not comply with . . . a prior . . . administrative warning demonstrates aggravated criminal intent and deserves additional punishment."  U.S.S.G. § 2B1.1 cmt. n.7(C).  A defendant

6

can only demonstrate aggravated criminal intent where he knows he is violating the order. The Guidelines further emphasize the knowledge requirement by supporting this enhancement for a defendant who is not named in a prior order issued to a controlled entity, but only if the defendant "had knowledge of that prior decree or order." *See id.*

Mr. Colvin has found no case where the defendant whose sentence was enhanced under section 2B1.1(b)(8)(C) lacked knowledge of the terms of the administrative order. In *United States v. Lewis*, 594 F.3d 1270 (10th Cir.), *cert. denied*, 130 S. Ct. 3441 (2010), the defendant raised this issue for the first time on appeal. The Tenth Circuit assumed without deciding that enhancement under this section requires knowledge by the defendant. *See id.* at 1288. Mr. Colvin respectfully contends that where Government has not proved he had knowledge of the terms of Hollenbeck's Cease and Desist Order, enhancement for violation of the Order is not warranted.

2.      The Government did not prove a violation of the Order.

The focus of the Cease and Desist Order is Hollenbeck's sale of Mobile Billboards investments.[2] There is no evidence that Mr. Colvin was involved with

---

[2] Hollenbeck testified he believed that he complied with the Cease and Desist Order by discontinuing his Mobile Billboards sales efforts, as Mr. Colvin had

7

Mobile Billboards investment sales. The Government apparently contends that Hollenbeck's sales of the investments in this case would violate the broader proscriptions in the Order on Hollenbeck's sales of "any security." The indictment in this case charged a conspiracy to commit mail fraud and securities fraud, but the Government dismissed the securities fraud charge before trial. The Government did not prove that Hollenbeck sold securities while working with Mr. Colvin. This provides an additional reason to deny the enhancement of Mr. Colvin's sentence for violation of Hollenbeck's Cease and Desist Order.

C.      The Enhancement For Vulnerable Victims Is Not Warranted.

Guidelines section 3A1.1(b)(1) provides for a two-level enhancement "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). A vulnerable victim is one "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to criminal conduct." *Id.* § 3A1.1 cmt. n.2(B). Thus, the vulnerable victim enhancement requires the Government to prove: 1) a victim was unusually vulnerable; and 2) that the defendant knew or should have known of such unusual vulnerability. *See, e.g., United States v. Llamas*, 599 F.3d 381, 388 (4th Cir. 2010).

_____

advised. This testimony further undercuts the necessary showing that Mr. Colvin could be held accountable for a knowing violation of the Order.

8

Here, there is no evidence that Mr. Colvin knew anything about victims' purported unusual vulnerability.

According to the PSR, Barrie Cook and his mother, Allie Cook, were vulnerable victims. PSR §§ 17, 18. Citing no supporting facts or proof, the PSR asserts "[i]t is also clear that the defendant was aware of this vulnerability." *Id.*, Addendum ¶ 9. There is no evidence that Mr. Colvin knew or should have known of any unusual vulnerability. He did not meet or talk with the Cooks. According to the testimony of Linda Wellborn at trial, her sister, Nancy Maloney, contacted Scott Hollenbeck and set up a meeting. There is no evidence that Hollenbeck told Mr. Colvin anything about the meeting or the Cooks.

Where the Government has not proved that Mr. Colvin knew or should have known of the unusual vulnerability of these victims, there is no basis for enhancement under section 3A1.1(b)(1).

Mr. Colvin further objects on the ground that there was no testimony presented at trial to support the basis for a finding of unusual vulnerability. The Government offered no proof at trial of Mr. Cook's alleged need for a lung transplant. Allie Cook's age, the only fact mentioned to support the contention she was a vulnerable victim, is not sufficient to support an enhancement. *See, e.g., United States v. Vega-Iturrino*, 565 F.3d 430, 434 (8th Cir. 2009). Ms. Cook's

9

current "physical condition" and the claim that she now resides in a nursing home, PSR, Addendum ¶ 9, is irrelevant to the question whether she was unusually vulnerable at the time she invested.

D.     Mr. Colvin Was Not A Leader Or Organizer Of A Criminal Activity That Involved Five Or More Participants Or Was Otherwise Extensive.

Guidelines section 3B1.1(a) provides for a four-level enhancement if the defendant was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). For purposes of this section, a "participant" is one who is criminally responsible for the commission of the offense. *Id.* § 3B1.1 cmt. n.1. The PSR asserts that Mr. Colvin is subject to this four-level enhancement. PSR ¶ 41. The facts in this case do not support a four-level enhancement for Mr. Colvin.

The Government did not prove that there were five or more criminally responsible "participants." The PSR concludes that Mr. Colvin, Scott Hollenbeck, Greg Bartko, Rebecca Plummer, Levonda Leamon, "and others" were participants. PSR, Addendum ¶ 10. Hollenbeck was an unindicted co-conspirator and thus a participant. According to the PSR, Legacy Resource Management, the company owned and operated by Plummer and Leamon, presented investors with investment options for Mr. Colvin and Bartko. PSR ¶ 10. That fact does not show Plummer or

Leamon were criminally responsible; Tim Gristy and others "presented investors with investment options for Mr. Colvin" without practicing the fraud practiced by Hollenbeck. Bartko and Plummer have been convicted of other offenses, not the offense charged in this case. The Government did not prove five criminally responsible participants in Mr. Colvin's offense.

Neither do the facts support a finding that Mr. Colvin organized or led criminal activity that was "otherwise extensive." In making this determination, the Court may properly consider "all persons involved during the course of the entire offense," including those that were not "participants" because they were not criminally culpable. U.S.S.G. § 3B1.1 cmt. n.3; *see United States v. Beverly*, 284 F. App'x 36, 41 (4th Cir. 2008). The Court may also consider "the width, breadth, scope, complexity, and duration of the scheme." *See Beverly*, 284 F. App'x at 42.

The criminal conspiracy here lasted only two years. *See* Indictment ¶ 3. The scope of the criminal conduct was Hollenbeck's fraudulent sales efforts. Other salesmen, like Tim Gristy, sold investments without making fraudulent misstatements and without any alleged losses by the investors. The fact that Hollenbeck's fraudulent sales efforts generated paperwork, which was handled according to the PSR by Hollenbeck's wife and Daniel Bookout, does not suggest an extensive criminal operation. *See United States v. Napoli*, 179 F.3d 1, 14 (2d

11

Cir. 1999) (involvement of others who are not criminally responsible participants, is relevant to determination whether fraud was "otherwise extensive" only if they did more than merely facilitate defendant's conduct; "they must perform conduct that is peculiar and necessary to the criminal scheme") (internal quotation omitted), *cert. denied*, 528 U.S. 1162 (2000). This is not a case where multiple employees applying unique skills unknowingly facilitated the fraud. *See Beverly*, 284 F. App'x at 42. In addition, it would be improper double-counting for the Court to base this enhancement on the amounts or the number of victims involved, which directly affect Mr. Colvin's offense level under section 2B1.1. In sum, only a two-level enhancement under section 3B1.1(c) is warranted in this case.

      E.      The Additional Enhancements Raised In The Government's Untimely Submission Are Not Supported By The Facts.

In its 20 December 2010 submission to the Probation Office, the Government asserted two additional grounds to enhance Mr. Colvin's offense level that were not discussed in the draft PSR: 1) relocating the fraudulent scheme from North Carolina to Tennessee to evade law enforcement or regulatory officials; and 2) substantially endangering the financial security of 100 or more victims. Mr. Colvin respectfully contends that the proper sanction for the Government's untimely suggestion of these additional grounds for enhancement is an order striking the submission to the

12

Probation Office and foreclosing consideration of these additional enhancements. An order precluding consideration of arguments that were not timely asserted by the party with the burden of proof is a common and appropriate sanction. If the Court nevertheless decides to consider these bases for enhancement, the Government cannot show that Mr. Colvin relocated the fraudulent investment scheme from North Carolina to Tennessee to evade law enforcement or regulatory officials, nor can the Government show the offense substantially endangered the financial security of 100 or more victims.

> 1. Mr. Colvin did not relocate the fraudulent scheme from North Carolina to Tennessee to evade law enforcement or regulatory officials.

Under section 2B1.1(b)(9)(A), two levels are added to a defendant's offense level if he "relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials." U.S.S.G. § 2B1.1(b)(9)(A). To support this enhancement, the Government must prove: 1) Mr. Colvin relocated the scheme; and 2) he did so to evade enforcement officials. *See, e.g., United States v. Braxton*, 374 Fed. App'x 248, 249 (3rd Cir. 2010). The PSR agrees with the Government and applies the two-level enhancement. PSR ¶ 39, Addendum ¶ 8.

Mr. Colvin did not relocate the scheme from North Carolina to Tennessee to

13

evade law enforcement officials.  To the contrary, Scott Hollenbeck, both before and after he solicited investments in Tennessee, solicited the bulk of the investors in North Carolina.  Hollenbeck relied on the same church-based connections to set up the Tennessee meeting discussed during the trial that he used in North Carolina, which is again inconsistent with a finding of relocation to evade detection. Enhancement under section 2B1.1(b)(9)(A) is not warranted here.  *See United States v. Randock*, No. CR-05-180-LRS, 2008 WL 2719002, at *4 (E.D. Wash. July 8, 2008) (evidence did not support enhancement under section 2B1.1(b)(9)(A) where only part of business was relocated to from Washington to Idaho and some business remained in Washington, the original jurisdiction; "if the Defendants were really trying to evade law enforcement or regulatory officials, it seems they would have tried to get further away than Post Falls, Idaho, which is located on the Washington/Idaho border") (attached as Exhibit 5), *aff'd in part and rev'd in part on other issues*, 330 F. App'x 628 (9th Cir. 2009).

The PSR says the Government proposed an alternative ground for the two-level enhancement section 2B1.1(b)(9):  the offense "otherwise involved sophisticated means."  PSR, Addendum ¶ 8; *see* U.S.S.G. § 2B1.1(b)(9)(C).[3]

---

[3] In fact, the Government's untimely letter mentions only enhancement under section 2B1.1(b)(9)(A) for relocating the fraudulent scheme.  The Government did

"Sophisticated means" means "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *See id.* § 2B1.1(b) cmt. n.8(B). "Whether a scheme is sophisticated must be viewed in light of the fraudulent conduct and differentiated, by assessing the intricacy or planning, of the conduct, from similar offenses conducted by different defendants." *United States v. Hance*, 501 F.3d 900, 909 (8th Cir. 2007); *see United States v. Robinson*, 538 F.3d 605, 608 (7th Cir. 2008) (enhancement requires evidence of "a greater level of planning or concealment" than the typical case) (internal quotation omitted).

The facts recited in the PSR do not support a sophisticated means enhancement. PSR, Addendum ¶ 8. While Mr. Colvin changed the name of one company to "Disciples Trust," the company never operated under its prior name – Franklin Asset Exchange Fund I – and it is a common practice to incorporate under one name and change it before use in commerce. Mr. Colvin changed the promotional materials from "Disciples Trust" to "Disciples Limited" after the Nevada authorities advised he could not use the name "Disciples Trust." Opening a bank account in the business's name is, again, a common practice. These facts do not reflect the kind of "especially complex or especially intricate offense conduct

---

not advance section 2B1.1(b)(9)(C) as a basis for enhancement.

pertaining to the execution or concealment of an offense" required to support this enhancement. U.S.S.G. § 2B1.1(b) cmt. n.8(B).

> 2. Mr. Colvin's offense did not substantially endanger the solvency or financial security of 100 or more victims.[4]

Guidelines section 2B1.1(b)(14)(B)(iii) provides for a four-level increase in the defendant's offense level if the offense "substantially endangered the solvency or financial security of 100 or more victims." U.S.S.G. § 2B1.1(b)(14)(B)(iii). The Government must identify which victims it contends had their solvency or financial security endangered, and it has not done so. The evidence at trial showed that many of the victims of Hollenbeck's fraudulent solicitations had a history of investing with Hollenbeck before he had any relationship with Mr. Colvin. The fact that many victims were repeat investors is inconsistent with a finding that 100 or more of the victims had their financial security threatened. A review of the Government's chart of the alleged victims[5] shows many of the victims invested only a few thousand dollars or less, while others invested $50,000 or more. In these circumstances, there can be no generalized conclusion drawn about the effect of making the investment on the victim's solvency or financial security in the absence of the individualized

---

[4] The PSR rejected this basis for enhancement. PSR, Addendum ¶ 11.

[5] Mr. Colvin maintains his objection that the Government's presentation of a chart of names is insufficient proof of the victims and their claimed losses.

16

proof that is lacking here. Moreover, the Private Placement Memorandum used in this case, including the application questionnaire, should have dissuaded anyone without substantial means from investing. *See* Gov't Trial Ex. 17 (attached as Exhibit 6).

F. Mr. Colvin's Guidelines Sentencing Range.

Mr. Colvin has 0 criminal history points, placing him in criminal history category I. PSR ¶ 19. For the reasons argued above, the correct loss attributable to Mr. Colvin is $4,250,000; 18 levels are added to the base offense level of 7. *See* U.S.S.G. § 2B1.1(b)(J). Mr. Colvin concedes that the facts support a four-level enhancement for 50 or more victims under section 2B1.1(b)(2)(B), and a two-level enhancement under section 3B1.1(c). Mr. Colvin's total offense level is 31, which establishes a Guidelines sentencing range of 108-135 months. *See* U.S.S.G. Sentencing Table.

II. A VARIANCE SENTENCE BELOW THE GUIDELINES RANGE IS SUFFICIENT TO MEET THE GOALS OF SENTENCING.

This Court is familiar with the command of section 3553(a) that the Court shall impose a sentence "sufficient, but not greater than necessary," to achieve the goals of sentencing. *See* 18 U.S.C. § 3553(a); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Even if the Court were to grant all of Mr. Colvin's objections,

17

he would still face a lengthy sentence.  Mr. Colvin respectfully contends that the

circumstances here present a strong case for a below-Guidelines variance sentence.

The Supreme Court has repeatedly stressed that this Court cannot and must

not presume that a sentence within the applicable Guidelines range is reasonable.

*See, e.g., Gall v. United States*, 552 U.S. 38, 50 (2007).  A number of courts and

commentators have recognized that the fraud Guidelines in section 2B1.1, because

they have numerous and overlapping enhancements and give great weight to the

somewhat amorphous concept of "loss," can often produce advisory sentencing

ranges that are indisputably far "greater than necessary" to advance the recognized

sentencing goals and that are otherwise divorced from common sentencing wisdom.

*See, e.g., United States v. Parris*, 573 F. Supp. 2d 744, 754 (E.D.N.Y. 2008) (strict

application of Guidelines for white-collar crimes can produce "a black stain on

common sense"); *United States v. Adelson*, 441 F. Supp. 2d 506, 506 (S.D.N.Y.

2006) ("This is one of those cases in which calculations under the Sentencing

Guidelines lead to a result so patently unreasonable as to require the Court to place

greater emphasis on the other sentencing factors to derive a sentence that comports

with federal law."); Andrew Weissmann & Joshua Block, *White-Collar Defendants*

*and White-Collar Crimes*, 116 Yale L.J. Pocket Part 286 (2007) (former federal

prosecutors asserting that "the current Federal Sentencing Guidelines for fraud and

other white-collar offences are too severe" and are greater "than necessary to satisfy the traditional sentencing goals of specific and general deterrence – or even retribution").

Mr. Colvin is a 54 year old first-time offender. He has a long work history. He and his wife have raised their adopted daughter, now in college and an academic success. They are now bankrupt. Nothing in Mr. Colvin's history and characteristics suggests the need for a lengthy prison term. *See* 18 U.S.C. § 3553(a)(1).

The investment opportunities that were the subject of the charges against Mr. Colvin were not set up as frauds. Tim Gristy and others soliciting for the same investments as Scott Hollenbeck did not defraud their customers, and those investors were repaid. Thus, the scheme to defraud here is not one created by Mr. Colvin; rather, he benefitted from the sales focus and schemes that Scott Hollenbeck had practiced and perfected before he had any relationship with Mr. Colvin. These circumstances militate against the kind of lengthy sentence suggested by the PSR and supported by the Government. *See id.*

For Mr. Colvin, both the social science statistics and his personal situation show there is no realistic risk of recidivism. *See id.* § 3553(a)(2)(B), (C). Sentences imposed by many different judges in white-collar fraud cases make clear

that a sentence substantially less than that proposed by the PSR will adequately reflect the seriousness of the offense, promote respect for the law, and provide a just punishment. *See id.* § 3553(a)(2)(A).

The directive in section 3553(a)(6) to avoid unwarranted sentencing disparities is a compelling justification for a reduced sentence for Mr. Colvin not only because of the national trend in white-collar sentencing, but also specifically because of the offenders in this case. Scott Hollenbeck was sentenced to 168 months in prison after being found guilty in the massive fraud that was the Mobile Billboards scheme. The evidence in this case showed that Hollenbeck practiced his same fraudulent schemes even before his involvement with Mobile Billboards. The U.S. Attorney's charging decision is the only reason Hollenbeck is not a defendant in this case. Imposing a sentence substantially below the Guidelines range in the PSR follows the directive in section 3553(a)(6) to avoid unwarranted sentencing disparities.

## CONCLUSION

For the foregoing reasons, defendant John Kent Colvin respectfully requests that the Court uphold his objections to the Presentence Report and impose a below-Guidelines variance sentence.

This the 9th day of January, 2011.

ELLIS & WINTERS LLP
 /s/ Paul K. Sun, Jr.
Paul K. Sun, Jr.
N.C. State Bar No. 16847
Post Office Box 33550
Raleigh, North Carolina  27636
Telephone:  (919) 865-7000
Telecopy:   (919) 865-7010
Electronic Mail: paul.sun@elliswinters.com
*Attorney for Defendant John Kent Colvin*

21

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that Defendant John Kent Colvin filed his Sentencing Memorandum with the clerk of court using the CM/ECF system, which will send notice of the filing to the United States of America via its attorney, Clay Wheeler.

This the 9th day of January, 2010.

 /s/ Paul K. Sun, Jr.
Paul K. Sun, Jr.
N.C. State Bar No. 16847
Post Office Box 33550
Raleigh, North Carolina  27636
Telephone:  (919) 865-7000
Telecopy:    (919) 865-7010
Electronic Mail: paul.sun@elliswinters.com
*Attorney for Defendant John Kent Colvin*