IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:09-CR-72-D

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| JOHN KENT COLVIN, ) | |
| ) | |
| Defendant. ) | |

On September 4, 2020, John Kent Colvin ("Colvin" or "defendant") moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and filed a memorandum and records in support [D.E. 104, 107]. On November 20, 2020, the United States responded in opposition [D.E. 116]. As explained below, the court denies Colvin's motion.

I.

Colvin engaged in a large investment fraud scheme from 2003 to 2005. The scheme had 302 victims (including vulnerable victims) and generated an actual loss of $21,009,429.69. On June 11, 2010, a jury convicted Colvin of conspiracy to commit mail fraud (count one) and five counts of mail fraud and aiding and abetting (counts two through six). See Presentence Investigation Report ("PSR") ¶¶ 1–4; [D.E. 64] 1–2. On January 18, 2011, the court held a sentencing hearing and adopted the facts set forth in the PSR. See [D.E. 91]; [D.E. 98] 5–6; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Colvin's total offense level to be 41, his criminal history category to be I, and his advisory guideline range to be 324 to 405 months' imprisonment. The statutory maximum sentence for count one was 60 months' imprisonment, and the statutory maximum sentence for counts two through six was 240 months' imprisonment. See [D.E. 98]

37–38. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Colvin to 60 months' imprisonment on count one, 240 months' imprisonment on counts two through six to run concurrently with each other and to run consecutively with count one, for a total sentence of 300 months' imprisonment. See id. at 38–62. Colvin appealed. See [D.E. 93]. On February 24, 2012, the United States Court of Appeals for the Fourth Circuit affirmed this court's judgment. See United States v. Colvin, 467 F. App'x 181, 184 (4th Cir.) (per curiam) (unpublished).

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's

2

application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

     (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

     (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See id. at 284. In doing so, the court consults not

---

    (C) Family Circumstances.—

        (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

        (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

    (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id. at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Colvin contends that he exhausted his administrative remedies. See [D.E. 104] 8; [D.E. 107] 2–3. The government has not invoked section 3582's exhaustion requirement. See [D.E. 116]; United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Colvin's claim on the merits.

Colvin seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Colvin cites the COVID-19 pandemic, his age, and his medical conditions, including acute asthmatic bronchitis, morbid obesity, hypertension, and severe arthritis, and hospitalizations related to colon issues, cellulitis, and circulatory problems. See [D.E. 104] 1–2, 6–8; [D.E. 107] 1, 4–6. Colvin also cites the conditions at FCI Forrest City, the fact that he has served more than 10 years of his sentence, and his rehabilitation efforts. See [D.E. 104] 1–2; [D.E. 107] 2–3, 6–8.

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Colvin states that he suffers from acute asthmatic bronchitis, morbid obesity, hypertension, and severe arthritis, and has

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

been hospitalized for colon issues, cellulitis, and circulatory problems, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Colvin serves his sentence. Accordingly, reducing Colvin's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, the conditions at FCI Forrest City, Colvin's age, his health conditions, his rehabilitation efforts, and the fact that he has served more than 10 years of his sentence are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Colvin's sentence. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Colvin is 64 years old and engaged in very serious criminal behavior from 2003 to 2005. See PSR ¶¶ 10–18. Colvin organized and engaged in a large investment fraud scheme in which Colvin solicited and collected money from 302 individual investors in North Carolina and elsewhere. See id. Colvin promised the individual investors that their money would be used to make real estate or mortgage investments and that they were guaranteed to receive between 12% and 14.4% in earnings or interest on these investments. See id. ¶ 11. Colvin also assured the individual investors that their investments were guaranteed through a surety bond program. See id. In fact, there was no surety bond program and Colvin used the individual investors' funds to invest in the development of a Montana coal mine. See id. Ultimately, Colvin's scheme failed and generated a total loss to

6

the individual investors of $21,009,429.69. See id. ¶ 18. Greed motivated Colvin's serious criminal conduct, and he pursued his criminal scheme without regard to the serious financial harm he inflicted on his victims. See id. ¶¶ 10–18; [D.E. 98] 59–62. Although Colvin has taken some positive steps while incarcerated on his federal sentence, Colvin sustained an infraction for assault. See [D.E. 107] 7; [D.E. 107-2]; [D.E. 116] 3; [D.E. 116-1]. The court also has considered Colvin's exposure to COVID-19, his criminal history category I, the conditions at FCI Forrest City, Colvin's health conditions, his rehabilitation efforts, his family support, and that he has served over 10 years of his sentence. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and treat Colvin, the section 3553(a) factors, Colvin's arguments, the government's persuasive response, and the need to punish Colvin for his serious criminal behavior, to incapacitate Colvin, to promote respect for the law, to deter others, and to protect society, the court declines to grant Colvin's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished).

As for Colvin's request for home confinement, Colvin seeks relief under the CARES Act. See [D.E. 104] 12. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). As such, the court dismisses Colvin's request for home confinement.

7

II.

In sum, the court DENIES Colvin's motion for compassionate release [D.E. 104, 107], and DISMISSES Colvin's request for home confinement.

SO ORDERED. This 24 day of March 2021.

*/s/ Dever*
JAMES C. DEVER III
United States District Judge